## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) MARCUS EDD, Administrator of the Estate of TRAVIENNA EDD, Deceased, | ) ) ) ) |
| Plaintiff, | ) Jury Trial Demanded ) |
| v. | ) Attorney Lien Claimed ) |
| 1) MCCURTAIN COUNTY JAIL TRUST, 2) KERRA BAILEY, LPN, 3) MADISON CHRISTOPHER, and 4) TARA HALLFORD, | ) ) ) 22-CV-327-GLJ ) ) |
| Defendants. | ) ) |

## COMPLAINT

**COMES NOW**, the Plaintiff, Marcus Edd ("Plaintiff"), as the Administrator of the Estate of Travienna Edd ("Ms. Edd"), deceased, by and through his attorneys of record, in the above styled case, and for his causes of action against the Defendants, alleges and states as follows:

## JURISDICTION AND VENUE

1. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivation of rights secured by the Eighth Amendment and/or Fourteenth Amendment to the United States Constitution as enforced for 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

2. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and the laws of the United States, particularly the Eighth Amendment and/or Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

1

3. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case and controversy arising under the United States Constitution and federal law.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

## PARTIES

5. Plaintiff Marcus Edd ("Plaintiff") is the duly appointed Administrator of the Estate of Travienna Edd, deceased. Ms. Edd was Plaintiff's mother.

6. Defendant McCurtain County Jail Trust ("MCJT") is, upon information and belief, a Public Trust, created pursuant to a certain "Trust Indenture" and Oklahoma statutes. The MCJT was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the McCurtain County Jail ("Jail"), including the policies, practices, procedures, and/or customs that violated Ms. Edd's rights as set forth in this Complaint. At all pertinent times, the MCJT was acting under color of State law, as set forth herein.

7. Defendant Kerra Bailey ("Nurse Bailey") was, at all times relevant hereto, employed by the MCJT, acting under color of state law within the scope of her employment. Defendant Bailey is sued in her individual capacity.

8. Defendant Madison Christopher ("Christopher") was, at all times relevant hereto, employed by the MCJT, acting under color of state law within the scope of her employment. Defendant Christopher is sued in her individual capacity.

9. Defendant Tara Hallford ("Hallford") was, at all times relevant hereto, employed by the MCJT, acting under color of state law within the scope of her employment. Defendant Hallford is sued in her individual capacity.

**FACTUAL ALLEGATIONS**

10. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

11. Ms Edd was booked into the McCurtain County Jail ("Jail") on or about January 17, 2020.

12. When Ms. Edd was booked into the Jail, she reported to Defendant Kerra Bailey, LPN, that she had lung cancer and bone cancer, diabetes, high blood pressure, and was prescribed several medications for her medical issues.

13. Ms. Edd also disclosed that she used a portable oxygen machine to help her breathe.

14. Ms. Edd further reported to Bailey that she was feeling suicidal.

15. Ms. Edd notified Defendant Bailey that her primary care provider was Kerri Seymour, APRN. The Jail contacted Ms. Seymour's office and placed an order for the medications Seymour had previously prescribed for Ms. Edd, which were Atorvastatin (for high cholesterol), Celexa (for depression), Depakote (for seizures), and Amlodipine (for high blood pressure). The Jail also placed an order for Lantus, the insulin Ms. Edd had been prescribed.

16. On February 6, 2020, Ms. Edd was transported to Carl Albert Community Mental Health Center ("Carl Albert") in Heavener, OK for an appointment with a mental health professional.

17. On June 17, 2020, Ms. Edd was seen by Ms. Seymour at the Jail due to multiple complaints about her health.

18. Ms. Edd complained of "kidney pain", "spider bites", "bones hurt", and "lung cancer."

19. Ms. Seymour started Ms. Edd on Seroquel for her mental health and trazodone, a Flovent inhaler, an Albuterol inhaler, and gabapentin.

20. Ms. Edd had regular appointments with Ms. Seymour and mental health professionals at Carl Albert in the following months.

21. On October 22, 2020, Ms. Edd had another appointment with Ms. Seymour due to complaints of shoulder pain, pain that radiated down her leg, and lower abdominal pain.

22. Additionally, Ms. Seymour recorded that Ms. Edd's heart rate, 128, was extremely high.

23. In November 2020, Ms. Edd's health began to significantly and obviously decline.

24. On November 9, 2020, Ms. Edd was again seen by Ms. Seymour.

25. Ms. Edd reported suicidal thoughts and severe pain all over her body, likely due to her cancer.

26. Unfortunately, and inexplicably, Jail staff and Jail medical staff, including Defendants Bailey, Hallford, and Christopher, began to discontinue several of Ms. Edd's prescribed medications in November 2020, contributing to her worsening symptoms.

27. Ms. Edd's movement sharply decreased as her pain decreased, and Defendants failed to take any steps to alleviate Plaintiff's pain or attempt to treat her worsening condition.

28. Instead, Defendant Bailey chided Ms. Edd for not being as active as she had previously been, ignoring the fact that Ms. Edd's cancer and other medical conditions rendered her unable to ambulate successfully.

29. On November 17, 2020 at approximately 10:00 p.m., Ms. Edd was

transported via ambulance to the McCurtain Memorial Hospital on the suspicion that she had suffered a stroke.

30. A jailer reported to hospital staff that Ms. Edd had experienced "off and on weakness and off and on slurred speech" since 7:00 p.m. on November 17.

31. Ms. Edd had irregular blood pressure and an extremely high heart rate.

32. Ms. Edd complained of constant pain in her back and shoulders and generalized weakness.

33. Ms. Edd's blood pressure was also consistently high and her heart rate was abnormally high.

34. Hospital staff noted that Ms. Edd was disoriented.

35. Ms. Edd was stabilized at the hospital and sent back to the Jail the next day, November 18, 2020. The hospital staff instructed Ms. Edd to rest and not engage in any "strenuous activity" until her condition improved.

36. Unfortunately, Ms. Edd's condition continued to deteriorate, yet Jail staff failed to provide her adequate supervision, care and treatment.

37. She complained of constant pain that made it difficult for her to move on a daily basis.

38. Ms. Edd's condition was exacerbated by Jail staff and Jail medical staff, including Defendant Bailey, failing to provide her with prescribed life-sustaining medications.

39. Additionally, November 18, 2020 was the last day that Ms. Edd was either sent to an outside medical facility or assessed or treated by a physician.

40. Instead, for a period of approximately 19 days, Jail staff and Jail medical staff, including Defendant Bailey, left Ms. Edd to languish alone in her cell, with her

condition obviously and dangerously deteriorating.

41. From November 19 through December 7, 2020, Ms. Edd's health continued to worsen and Jail staff and Jail medical staff repeatedly failed to address her obviously serious medical needs.

42. Through Ms. Edd suffered from numerous comorbidities, she was not medically monitored or assessed for a period of approximately 19 days.

43. As Ms. Edd began to refuse meals and was visibly emaciated and losing the ability to ambulate, Jail staff and Jail medical staff, including Defendant Bailey failed to take measures to provide her with medical care.

44. Jail medical staff and Jail staff refused to provide Ms. Edd with her oxygen machine that was imperative to her breathing.

45. In late November/Early December 2020, Ms. Edd was effectively immobile due to her pain, weakness and life-threatening medical conditions.

46. Ms. Edd could not even dress or shower herself. While Ms. Edd was in obvious and emergent need of medical attention from a qualified professional, none was provided.

47. On or around December 6, 2020, Jail staff, including Defendants Christopher and Hallford picked Ms. Edd, who was naked, up and placed her in a wheelchair for the purposes of provided her with a shower. Christopher and Hallford then wheeled Ms. Edd into an isolation cell and left her on the floor.

48. Surveillance video shows Ms. Edd's skeleton-like physique. She is so sick and weak that she is unable to stand on her own power. At one point, Ms. Edd collapses to the floor right in front two Jailers. She was in obvious need of immediate transport to an emergency room. Yet, even at this point, the Christopher and Hallford completely

disregarded the substantial and grossly apparent risks to her health and safety. Christopher and Hallford and Jail medical staff left Ms. Edd alone and naked, lying on the floor of her cell in excruciating pain.

49. At approximately 3:30 a.m. on December 17, 2020, a Hallford found Ms. Edd unresponsive in her isolation cell.

50. EMS was called to the Jail, but Ms. Edd was already deceased.

51. The Medical Examiner's report revealed that Ms. Edd's cause of death was likely lung cancer, with heart disease, dehydration, and diabetes as contributing factors.

**Allegations Concerning the Jail's Medical Delivery System**

52. Upon information and belief, the Jail/MCJT has maintained, for years, a woefully inadequate medical delivery system.

53. As a matter of practice/custom, the Jail/MCJT has not employed a physician, physician's assistant ("PA"), or nurse practitioner ("NP").

54. Instead, upon information and belief, the Jail/MCJT relies on a single LPN to care for inmates at the Jail, with no supervision from more highly trained medical professionals.

55. Importantly, LPNs are qualified only to support other medical professionals, such as Registered Nurses ("RN"), PAs, NPs, and physicians.

56. LPNs are trained to provide bedside care, take vital signs, observe patients, and report observations to more highly trained medical professionals. LPNs are, importantly, not qualified to make diagnoses or come up with treatment plans.

57. Additionally, upon information and belief, the Jail/MCJT has failed to provide *any* kind of medical training to Jail staff, instead telling Jail staff to rely on "common sense" with respect to the medical needs and treatment of inmates.

58. Upon information and belief, Jail staff is provided no training on how to identify emergency medical conditions or what to do in the case of a medical emergency.

59. Upon information and belief, Jail/MCJT had a policy/practice/custom of failing to ensure that inmates received necessary medications.

60. Upon information and belief, a Jail nurse is only on duty at the Jail during normal weekday business hours.

61. Therefore, on nights and weekends, inmate medical concerns are left in the hands of the untrained Jail staff.

62. Additionally, upon information and belief, the Jail/MCJT had an established policy/practice/custom of failing to properly monitor inmates, like Ms. Edd, with serious medical needs.

63. Consistent with this policy and practice, Jail staff and Jail medical staff failed to monitor Ms. Edd's condition at regular intervals.

64. As a result, upon information and belief, Jail staff did not discover that Ms. Edd was nonresponsive in her isolation cell until she was beyond resuscitating.

65. MCJT officials knew or should have known of the substantial risks to inmate health and safety occasioned by these policies and customs, but failed to take reasonable measures to alleviate those risks.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Cruel and Unusual Punishment in Violation of the Eighth and/or Fourteenth Amendments to the Constitution of the United States (Non-Existent or Inadequate Medical and Mental Health Care) (42 U.S.C. § 1983)**

A.    **Nurse Bailey/Defendants Hallford and Christopher/Underlying Violations**

8

66. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

67. Hallford, Christopher and Nurse Bailey knew that there were substantial risks to Ms. Edd's health and safety.

68. It was well known and documented that Ms. Edd suffered from several serious and life-threatening health conditions, including cancer, diabetes, and heart disease.

69. Nevertheless, Defendants disregarded the known and obvious risks to Ms. Edd's health and safety.

70. From November 18, 2020 until Ms. Edd's death on December 7, 2020, Jail staff, including Hallford and Christohper, and Nurse Bailey failed to provide Ms. Edd with, *inter alia*: timely or adequate mental health or medical treatment; proper or adequate mental health or medical monitoring and supervision; necessary medications; appropriate or adequate medical assessments; medical treatment plans; mental health assessments or evaluations; access to mental health or medical personnel capable of, and willing to, properly evaluate and treat serious mental health or medical needs; emergent medical or mental health care; and precautionary measures to prevent injury.  The failure to provide these basic health care measures constitutes deliberate indifference to Ms. Edd's serious medical needs, health and safety.

71. Further, Jail staff, including Hallford and Christopher, failed to properly monitor Ms. Edd while she was in the isolation cell on December 6-7, 2020, despite the fact that they knew that her condition was dire.

72. As a direct and proximate result of Defendants' conduct, Ms. Edd experienced physical pain, severe emotional distress, mental anguish, loss of consortium,

9

loss of life, and the damages alleged herein.

73. As a direct and proximate result of Jail staff, including Hallford and Christopher, and Nurse Bailey's conduct, Plaintiff is entitled to pecuniary and compensatory damages. Plaintiff is entitled to damages due to the deprivation of Ms. Edd's rights secured by the U.S. Constitution.

**B. Official Capacity Liability (Applicable to MCJT)**

74. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

75. The MCJT failed to provide constitutionally sufficient medical training and supervision to Jail staff for the assessment, evaluation, and treatment of serious medical conditions.

76. The MCJT failed to employ or contract with sufficient medical professionals capable of dealing with inmates', like Ms. Edd, serious medical needs.

77. The aforementioned acts and/or omissions of Jail staff and Nurse Bailey in being deliberately indifferent to Ms. Edd's health and safety and violating Ms. Edd's civil rights are causally connected with customs, practices, and policies which the MCJT promulgated, created, implemented and/or possessed responsibility for.

78. Such policies, customs, and/or practices, include, but are not limited to:

   a. A failure to train Jail staff on how to recognize and respond to an inmate's emergent medical condition;

   b. A practice of failing to adequately assess and treat – and ignoring and disregarding – obvious or known symptoms of emergent and life-threatening conditions;

    c. A failure to refer inmates with obviously serious medical conditions to outside medical professionals;

    d. An utter lack of physician supervision over the clinical care provided to inmates;

    e. A failure by Jail staff and Jail nursing staff to ensure that inmates received their prescribed medications and other necessary, life-saving medical treatments.

    f. A failure to staff the Jail with personnel capable of assessing, evaluating or treating the serious medical needs of inmates like Ms. Edd; and

    g. A failure to properly monitor and supervise inmates who are placed in isolation cells, particularly those with obviously serious medical conditions.

79. Plaintiff has provided additional allegations regarding the Jail's unconstitutional healthcare delivery system at ¶¶ 52-65.

80. Pursuant to the polices, customs, and/or practices listed above, Ms. Edd: never saw any medical professional other than an LPN after November 18, 2020; was not sent to an outsider medical provider; did not receive her prescribed, life-sustaining medications; was not permitted to use her portable oxygen machine; and was not properly monitored in her isolation cell, despite her obvious symptoms of a serious and life-threatening medical condition.

81. The risks to inmates like Ms. Edd presented by the maintenance of such a deficient medical delivery system were substantial and obvious such that MCJT should have known them.

82. MCJT failed to take reasonable measures to alleviate those risks.

83. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Ms. Edd suffered injuries and damages as alleged herein.

**WHEREFORE**, based on the foregoing, Plaintiff prays that this Court grant him

the relief sought, including, but not limited to, actual damages and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing of suit, reasonable attorney fees, and all other relief deemed appropriate by this Court.

          Respectfully submitted,

          **SMOLEN & ROYTMAN**

          /s/Daniel E. Smolen
          Daniel E. Smolen, OBA #19943
          Robert M. Blakemore, OBA #18656
          701 S. Cincinnati Avenue
          Tulsa, Oklahoma 74119
          (918) 585-2667 P
          (918) 585-2669 F
          danielsmolen@ssrok.com
          bobblakemore@ssrok.com

          ***Attorneys for Plaintiff***